UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
09-CR-331-A

DESMOND FORD,

Defendant.

For the second time in the last year and one-half,  Defendant Desmond Ford has filed a motion seeking early termination of his term of supervised release. ECF #2580.  In February 2025, Ford previously unsuccessfully sought early termination. ECF #2487 and #2492.  For the reasons set forth below, Ford's motion for early termination is **DENIED**.

## I. BACKGROUND

On March 24, 2014, Ford pleaded guilty to Count 1 of the Fourth Superseding Indictment, which charged him with RICO Conspiracy, in violation of 18 U.S.C. Section 1962(d).   ECF #1301. As part of his plea, Ford admitted that he was a member of—and had a leadership role in—the 10th Street Gang, and that, as a member and leader of that gang, he distributed large quantities of cocaine and cocaine base and had possessed and distributed firearms to other gang members. *Id*.

On March 20, 2015, Ford was sentenced to a term of imprisonment of 200 months, to be followed by five years of supervised release. ECF #1749. Ford was

released from Bureau of Prisons custody on December 28, 2023, at which time he commenced his term of supervised release. Ford's term of supervised release is set to expire on December 28, 2028.  On June 26, 2026, Ford, proceeding *pro se*, for the second time since he was released from custody, moved pursuant to 18 U.S.C. §3583(e)(1) to terminate his term of supervised release. ECF #2580. The government opposes the motion. ECF #2585.

## II. DISCUSSION

A district court may terminate a term of supervised release if (i) the supervisee has completed "more than one year" of his previously imposed term of supervision, and (ii) the court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In making that assessment, the court must consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" of Title 18, which address "general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997). In addition, the court must consider "any pertinent policy statement[s]" issued by the United States Sentencing Commission, 18 U.S.C. § 3553(a)(5), including its 2025 amendments to section 5D1.4 of the United States Sentencing Guidelines. Those amendments identify six supplemental factors that "court[s] may wish to consider," including (i) "any history of court-reported violations" by the supervisee; (ii) "the ability of the [supervisee] to lawfully self-manage;" (iii) whether the supervisee has substantially complied "with all conditions of supervision;" (iv) whether the supervisee has engaged "in appropriate prosocial

2

activities;" (v) whether the supervisee has "demonstrated [a] reduction in [the] risk level" assigned to him by Probation; and finally (vi) "whether termination will jeopardize public safety, as evidenced by the nature of the [supervisee's] offense, the [supervisee's] criminal history, the [supervisee's] record while incarcerated, the [supervisee's] efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant." U.S.S.G. § 5D1.4 cmt. n.1(B) (U.S. Sent'g Comm'n 2025).

Although the district court must engage in an "individualized assessment of the need for ongoing supervision" of the supervisee, U.S.S.G. § 5D1.4(b), the decision of whether to grant early termination of supervised release ultimately "rests within the discretion of the district court," *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (citing *Lussie*r, 104 F.3d at 36).  Moreover, "[e]arly termination 'is not warranted as a matter of course.' Full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination."  *United States v. Kaplan*, No. 1:23-CR-320-GHW, 2026 WL 1801190, at *2 (S.D.N.Y. June 22, 2026)(citation omitted).

Upon this Court's review of Ford's most recent termination request, the Court observes that much of the documentation submitted in support of that request was also previously submitted in support of his prior unsuccessful request. Compare, ECF #2487 and #2580.  As with his prior motion, Ford relies on his compliance with the conditions imposed by the Court and Probation; the fact that he has not committed any violations or been arrested; his "maint[enance] of stable lawful

3

employment" at Smoking Joe's in Niagara Falls, New York; and his completion of various programs. ECF #2580. Ford's latest motion attaches the same letters of reference he attached to his first motion, including a letter from Buffalo Transportation, a company for which he no longer works. All the letters were written in January 2025. *Id*.  In opposing Ford's request for early termination, the Probation Office notes that notwithstanding his claim that he has maintained lawful employment, Ford fails to explain the fact that he "abruptly" quit his employment with Buffalo Transportation in September 2025, and had remained unemployed until January 2026, when he began working at Smoking Joe's.  Further, Ford does not meaningfully discuss his latest employment at Smoking Joe's, nor explain how such employment provides support for early termination besides establishing that he is currently working. Further, he fails to offer any specific reason as to why his supervision is overly burdensome or in conflict with his current and future goals. Indeed, "full compliance with the terms of supervised release, without more, generally does not warrant early termination ... [because] if every defendant who complied with the terms of a supervised release were entitled to early termination, the exception would swallow the rule." *United States v. Kassim*, No. 15-CR-00554, 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020); *see also United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (an "unblemished" record post-incarceration alone is not enough to justify early release).

4

**III. CONCLUSION**

Once again, while the Court commends Mr. Ford's compliance with his supervision terms, his seemingly good behavior, and his employment, they are what is expected of him and do not warrant early termination of supervised release. The serious nature of the offense and the Court's findings as to the need to continue to protect the public, to provide Mr. Ford with the resources he needs, and to avoid unwarranted sentencing disparities also weigh against early termination of supervised release.

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for early termination of supervised release (ECF #2580) is **DENIED**.


**IT IS SO ORDERED.**


    *s/Richard J. Arcara*
    HONORABLE RICHARD J. ARCARA
    UNITED STATES DISTRICT COURT


Dated:  August 3, 2026
        Buffalo, New York